FILED
CLERK, U.S. DISTRICT COURT

JUN - 6 2010

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DUSHUN WHITE,                    )   NO. CV 10-598-GAF(E)
                                 )
              Petitioner,        )
                                 )
     v.                          )   ORDER ADOPTING FINDINGS,
                                 )
COLLEEN NOLL, Warden,            )   CONCLUSIONS AND RECOMMENDATIONS
                                 )
              Respondent.        )   OF UNITED STATES MAGISTRATE JUDGE
                                 )
_____)

     Pursuant to 28 U.S.C. section 636, the Court has reviewed the
Petition, all of the records herein and the attached Revised Report
and Recommendation of United States Magistrate Judge.  The Court
approves and adopts the Magistrate Judge's Revised Report and
Recommendation, except for page 13, line 21 through page 14, line 13
thereof, which is hereby replaced with the following:

          In Hayward, the Ninth Circuit held that, "in the
          absence of state law establishing otherwise, there is no
          federal constitutional requirement that parole be granted
          in the absence of 'some evidence' of future dangerousness.

1    . . ." Hayward, 2010 WL 1664977, at *10.  The Hayward

2    Court suggested that a federal Due Process liberty interest

3    might arise when state law establishes such a requirement.

4    Id. at *10.  Ultimately, however, the Hayward Court stated

5    that it did not need to decide whether a federal Due

6    Process liberty interest arises because of California law's

7    requirement that parole be granted in the absence of "some

8    evidence" of future dangerousness.  Id. at *10-11.  The

9    Hayward Court stated that it did not need to decide this

10   issue given the fact that California's "some evidence"

11   requirement is "exactly the same" as the requirement

12   previously applied in pre-Hayward Ninth Circuit case law.

13   Hayward, 2010 WL 1664977, at *10-11 (citing Lawrence and

14   Shaputis).  Therefore, in a habeas case challenging a

15   finding of parole unsuitability in California, the federal

16   district court "need only decide whether the California

17   judicial decision [upholding the finding] was an

18   'unreasonable application' of the California 'some

19   evidence' requirement, or was 'based on an unreasonable

20   determination of the facts in light of the evidence.'"

21   Hayward, 2010 WL 1664977, at *11 (citing 28 U.S.C. §§

22   2254(d)(1), (2)); but cf. Pearson v. Muntz, ____ F.3d ____,

23   2010 WL 2108964, at *2 (9th Cir. May 24, 2010) ("By holding

24   that a federal habeas court may review the reasonableness

25   of the state court's application of the California 'some

26   evidence' rule, Hayward necessarily held that compliance

27   with the state requirement is mandated by federal law,

28   specifically the Due Process Clause").

1    IT IS ORDERED that Judgment be entered denying and dismissing
2  the Petition with prejudice.

3

4    IT IS FURTHER ORDERED that the Clerk serve copies of this Order,
5  the Magistrate Judge's Revised Report and Recommendation and the
6  Judgment herein by United States mail on Petitioner and counsel for
7  Respondent.

8

9    LET JUDGMENT BE ENTERED ACCORDINGLY.

10

11    DATED: _____6/6_____, 2010.

12

13

14                                    _____
                                      GARY A. FEESS
15                                    UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11   DUSHUN WHITE,                    )   CV 10-598-GAF(E)
                                      )
12              Petitioner,           )
                                      )
13        v.                          )   REVISED REPORT AND RECOMMENDATION OF
                                      )
14   COLLEEN NOLL, Warden,            )   UNITED STATES MAGISTRATE JUDGE
                                      )
15              Respondent.           )
     _____)
16

17

18        This Revised Report and Recommendation is submitted to the

19   Honorable Gary A. Feess, United States District Judge, pursuant to 28

20   U.S.C. section 636 and General Order 05-07 of the United States

21   District Court for the Central District of California.

22

23                         PROCEEDINGS

24

25        Petitioner filed a "Petition for Writ of Habeas Corpus By a

26   Person in State Custody" on January 27, 2010.  Respondent filed an

27   Answer and lodged certain documents on March 17, 2010.  Petitioner

28   filed a Traverse on March 31, 2010.



1    The Magistrate Judge filed a "Report and Recommendation" on

2  April 12, 2010.  Petitioner filed objections on April 26, 2010.  In

3  light of the Ninth Circuit's en banc decision in Hayward v. Marshall,

4  ___ F.3d ___, 2010 WL 1664977 (9th Cir. Apr. 22, 2010) ("Hayward"),

5  the Report and Recommendation, filed April 12, 2010, has been

6  withdrawn.

7

8                            **BACKGROUND**

9

10    On January 18, 1984, Petitioner led his crime partners in a

11  hastily-planned robbery of several persons who had been sitting in a

12  car (Lodgment 7 at 7-21).  During this robbery, Petitioner shot and

13  killed Curtis Martin (Lodgment 7 at 7-8).  Petitioner was convicted of

14  second degree murder, and the use of a firearm in the commission of

15  the offense (Lodgment 2 at 1).  Petitioner received a sentence of

16  fifteen years to life.  Id.

17

18    On March 5, 2009, Petitioner appeared before the California Board

19  of Parole Hearings ("Board") for a subsequent parole hearing

20  (Lodgment 7).  The Board denied parole suitability for three years

21  (Lodgment 7 at 62-66).

22

23    Petitioner filed a petition for habeas corpus in the Los Angeles

24  Superior Court, which that court denied in a reasoned order (Lodgments

25  1-2).  Petitioner filed a petition for habeas corpus in the California

26  Court of Appeal, which that court denied in a reasoned order

27  (Lodgments 3-4).  Petitioner filed a petition for review in the

28  California Supreme Court, which that court denied summarily (Lodgments

                                    2

1  5-6).

2

3  **THE HEARING AND DECISION**

4

5  I.  <u>**The Hearing**</u>

6

7      Petitioner appeared at the hearing, represented by counsel

8  (Lodgment 7).  The Presiding Commissioner recited Petitioner's version

9  of the commitment offense, and Petitioner answered certain questions

10  concerning the offense (Lodgment 7 at 7-21).  According to Petitioner,

11  he and his crime partners decided to rob Curtis Martin and the

12  passengers in Martin's car (Lodgment 7 at 10-12, 19).  Petitioner

13  quickly retrieved a loaded, sawed-off rifle for this purpose (Lodgment

14  7 at 9-10, 20).  Petitioner said that, when Martin was ordered to give

15  up his money, Martin made hand gestures which Petitioner misunderstood

16  (Lodgment 7 at 8).  Even though Petitioner is almost sure that Martin

17  said "be cool," Petitioner allegedly jumped back and pulled the

18  trigger of the rifle (Lodgment 7 at 8, 43-44).  Martin grabbed himself

19  and fell down, mortally wounded (Lodgment 7 at 14).  Petitioner and

20  his crime partners fled with money obtained from the passengers and

21  did not attempt to assist or summon aid for Martin (Lodgment 7 at 15-

22  17, 43-46).  Petitioner was involved in the Crips gang (Lodgment 7 at

23  25, 57; Lodgment 8 at 4).

24

25      Petitioner's criminal history included a theft as a juvenile, a

26  gang-related shooting as a juvenile that constituted assault with a

27  deadly weapon with great bodily injury, and two counts of burglary in

28  which, on separate occasions, Petitioner entered an apartment and



3

1 | robbed a female or females at gunpoint (Lodgment 7 at 22-24).  On the

2 | second of these two occasions, a female victim jumped through a window

3 | in an attempt to escape, only to be dragged back into the residence

4 | and raped by Petitioner's two crime partners (Lodgment 7 at 24).

6 |     At the hearing, Petitioner denied having smoked marijuana on a

7 | regular basis (Lodgment 7 at 20-21).  Yet, Petitioner also admitted

8 | the approximate truth of a probation report saying that he smoked five

9 | to six marijuana cigarettes per day (Lodgment 7 at 21).  Petitioner

10 | denied any problem with alcohol (Lodgment 7 at 18).

12 |     According to statements made at the hearing, Petitioner's prison

13 | disciplinary history includes nine disciplinary convictions, or

14 | "115's" and ten "128's" (Lodgment 7 at 31-32).[1]  None of Petitioner's

15 | numerous prison disciplinary matters have occurred more recently than

16 | June of 1999.  Id.

18 |     In 2007, a psychologist's report diagnosed "Antisocial

19 | Personality Disorder" (Lodgment 8 at 4).  The same report applied

20 | three mechanisms in an attempt to estimate the likelihood Petitioner

21 | would commit violent acts if released from prison (Lodgment 8).  The

22 | psychologist opined that, compared with "other life term inmates,"

23 | Petitioner "presents a moderate to low risk of future violence."  Id.

---

[1]     The California Department of Corrections and
Rehabilitation uses Form 115 to report prisoners' rules
violations.  See Lira v. Herrera, 427 F.3d 1164, 1167 n.4
(9th Cir. 2005), cert. denied, 549 U.S. 1204 (2007).  The
Department uses counseling "chronos" on Form 128 to record
instances of minor misconduct.  See Cal. Code Regs., tit. 15,
§ 3312(a)(2).

4

1  Two of the three mechanisms for estimating violence potential rated
2  Petitioner in the "moderate" range.  Id.

3

4      Also discussed at the hearing were certain positive factors
5  concerning Petitioner, including his GED, letters of support, plans
6  for parole, completion of self-help programs, certificate as a
7  pasteurizer, work as a prison barber, and participation in Narcotics
8  Anonymous (Lodgment 7 at 26-37).

9

10  II.  **The Board's Decision**

11

12      The Board weighed the considerations provided in the applicable
13  regulations and determined that Petitioner was unsuitable for parole
14  because he would pose a present risk of danger to society or a threat
15  to public safety if released from prison (Lodgment 7 at 62).   The
16  Board relied, inter alia, on the nature of the commitment offense,
17  Petitioner's criminal history, and the 2007 psychological report
18  (Lodgment 7 at 62-65).   The Board also mentioned Petitioner's history
19  of prison discipline, although the Board commended Petitioner for the
20  fact that he had not had a 115 since 1995 (Lodgment 7 at 65).   The
21  Board also specifically commended Petitioner for having obtained his
22  GED and having participated in Narcotics Anonymous since 1993
23  (Lodgment 7 at 65-66).   The Board determined that the denial would be
24  for only three years, rather than for ten or fifteen years (Lodgment 7
25  at 66).
26  ///
27  ///
28  ///

5

1

## STANDARD OF REVIEW

2

3      A federal court may not grant an application for writ of habeas

4   corpus on behalf of a person in state custody with respect to any

5   claim that was adjudicated on the merits in state court proceedings

6   unless the adjudication of the claim: (1) "resulted in a decision that

7   was contrary to, or involved an unreasonable application of, clearly

8   established Federal law, as determined by the Supreme Court of the

9   United States"; or (2) "resulted in a decision that was based on an

10   unreasonable determination of the facts in light of the evidence

11   presented in the State court proceeding."  28 U.S.C. § 2254(d);

12   Woodford v. Visciotti, 537 U.S. 19, 24-26 (2002); Early v. Packer, 537

13   U.S. 3, 8 (2002); Williams v. Taylor, 529 U.S. 362, 405-09 (2000).

14

15      "Clearly established Federal law" refers to the governing legal

16   principle or principles set forth by the Supreme Court at the time the

17   state court renders its decision.  Lockyer v. Andrade, 538 U.S. 63

18   (2003).  A state court's decision is "contrary to" clearly established

19   Federal law if: (1) it applies a rule that contradicts governing

20   Supreme Court law; or (2) it "confronts a set of facts . . .

21   materially indistinguishable" from a decision of the Supreme Court but

22   reaches a different result.  See Early v. Packer, 537 U.S. at 8

23   (citation omitted); Williams v. Taylor, 529 U.S. at 405-06.

24

25      Under the "unreasonable application prong" of section 2254(d)(1),

26   a federal court may grant habeas relief "based on the application of a

27   governing legal principle to a set of facts different from those of

28   the case in which the principle was announced."  Lockyer v. Andrade,



538 U.S. at 76 (citation omitted); see also Woodford v. Visciotti, 537 U.S. at 24-26 (state court decision "involves an unreasonable application" of clearly established federal law if it identifies the correct governing Supreme Court law but unreasonably applies the law to the facts).  A state court's decision "involves an unreasonable application of [Supreme Court] precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply." Williams v. Taylor, 529 U.S. at 407 (citation omitted).

"In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (citation omitted).  "The state court's application must have been 'objectively unreasonable.'"  Id. at 520-21 (citation omitted); see also Clark v. Murphy, 331 F.3d 1062, 1068 (9th Cir.), cert. denied, 540 U.S. 968 (2003).  In applying these standards, this Court looks to the last reasoned state court decision. See Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008).

## DISCUSSION

For the reasons discussed below, the Petition should be denied and dismissed with prejudice.

///
///
///



7

I.    **Governing Legal Standards**

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979) ("Greenholtz"). In some instances, however, state statutes may create liberty interests in parole release entitled to protection under the federal Due Process clause. See Bd. of Pardons v. Allen, 482 U.S. 369, 371 (1987); Greenholtz, 442 U.S. at 12. "If there is any right to release on parole, or to release in the absence of some evidence of future dangerousness, it has to arise from substantive state law creating a right to release." Hayward v. Marshall, ___ F.3d ___, 2010 WL 1664977, at *5 (9th Cir., Apr. 22, 2010) (en banc).

Section 3041(b) of the California Penal Code provides, in pertinent part:

> The panel or the board . . . shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.

Under applicable state regulations, "[r]egardless of the length of time served, a life prisoner shall be found unsuitable for and

8

1 denied parole if in the judgment of the [Board] the prisoner will pose

2 an unreasonable risk of danger to society if released from prison."

3 Cal. Code Regs., tit. 15, § 2402(a).  In determining suitability for

4 parole, the Board shall consider "[a]ll relevant, reliable information

5 available."  Cal. Code Regs., tit. 15, §§ 2402(b).  The Board may

6 consider, _inter alia_, "the circumstances of the prisoner's social

7 history; past and present mental state; past criminal history,

8 including involvement in other criminal misconduct which is reliably

9 documented; the base and other commitment offenses, including behavior

10 before, during and after the crime; past and present attitude toward

11 the crime; any conditions of treatment or control, including the use

12 of special conditions under which the prisoner may safely be released

13 to the community; and any other information which bears on the

14 prisoner's suitability for release."  _See_ Cal. Code Regs., tit. 15,

15 § 2402(b).  The state regulations enumerate certain circumstances

16 tending to show unsuitability or suitability for release, described as

17 "general guidelines," but also indicate that the importance of any

18 circumstance or combination of circumstances in a particular case is

19 left to the judgment of the Board.  _See_ Cal. Code Regs., tit. 15,

20 § 2402(c).

21

22     Circumstances tending to show unsuitability include:

23

24     (1) Commitment Offense.  The prisoner committed the offense

25     in an especially heinous, atrocious or cruel manner. The

26     factors to be considered include:

27 ///

28 ///



9

1   (A) Multiple victims were attacked, injured or killed in the

2   same or separate incidents.

3

4   (B) The offense was carried out in a dispassionate and

5   calculated manner, such as an execution-style murder.

6

7   (C) The victim was abused, defiled or mutilated during or

8   after the offense.

9

10  (D) The offense was carried out in a manner which

11  demonstrates an exceptionally callous disregard for human

12  suffering.

13

14  (E) The motive for the crime is inexplicable or very trivial

15  in relation to the offense.

16

17  (2) Previous Record of Violence.  The prisoner on previous

18  occasions inflicted or attempted to inflict serious injury

19  on a victim, particularly if the prisoner demonstrated

20  serious assaultive behavior at an early age.

21

22  (3) Unstable Social History.  The prisoner has a history of

23  unstable or tumultuous relationships with others.

24

25  (4) Sadistic Sexual Offenses.  The prisoner has previously

26  sexually assaulted another in a manner calculated to inflict

27  unusual pain or fear upon the victim.

28  ///



10

1    (5) Psychological Factors.  The prisoner has a lengthy

2    history of severe mental problems related to the offense.

3

4    (6) Institutional Behavior.  The prisoner has engaged in

5    serious misconduct in prison or jail.

6

7  Cal. Code Regs., tit. 15, § 2402(c).

8

9    Circumstances tending to indicate suitability include:

10

11    (1) No Juvenile Record.  The prisoner does not have a record

12    of assaulting others as a juvenile or committing crimes with

13    a potential of personal harm to victims.

14

15    (2) Stable Social History.  The prisoner has experienced

16    reasonably stable relationships with others.

17

18    (3) Signs of Remorse.  The prisoner performed acts which

19    tend to indicate the presence of remorse, such as attempting

20    to repair the damage, seeking help for or relieving

21    suffering of the victim, or indicating that he understands

22    the nature and magnitude of the offense.

23

24    (4) Motivation for Crime.  The prisoner committed his crime

25    as the result of significant stress in his life, especially

26    if the stress has built over a long period of time.

27  ///

28  ///



1       (5) Battered Woman Syndrome.  At the time of the commission

2       of the crime, the prisoner suffered from Battered Woman

3       Syndrome, as defined in section 2000(b), and it appears the

4       criminal behavior was the result of that victimization.

5

6       (6) Lack of Criminal History.  The prisoner lacks any

7       significant history of violent crime.

8

9       (7) Age.  The prisoner's present age reduces the probability

10      of recidivism.

11

12      (8) Understanding and Plans for Future.  The prisoner has

13      made realistic plans for release or has developed marketable

14      skills that can be put to use upon release.

15

16      (9) Institutional Behavior.  Institutional activities

17      indicate an enhanced ability to function within the law upon

18      release.

19

20 Cal. Code Regs., tit. 15, § 2402(d).

21

22      Upon a finding of suitability, the Board sets a "base term"

23 established solely on the gravity of the base crime, using a matrix of

24 base terms set forth in California Code of Regulations § 2403.  See

25 Cal. Code Regs. tit. 15, § 2403(a).

26

27      State authorities' discretion in parole matters is "great" and

28 "involves the deliberate assessment of a wide variety of



12

1  individualized factors on a case-by-case basis, and the striking of a

2  balance between the interests of the inmate and the public." In re

3  Powell, 45 Cal. 3d 894, 902, 248 Cal. Rptr. 431, 755 P.2d 881 (1988)

4  (internal quotations and citation omitted).

5

6      Prior to Hayward, the Ninth Circuit had held that federal Due

7  Process required that a state finding of parole unsuitability be

8  supported by "some evidence," in accordance with the standard set

9  forth in Superintendent v. Hill, 472 U.S. 445, 455 (1985). See Irons

10 v. Carey, 505 F.3d 846, 851 (9th Cir. 2007); Sass v. Calif. Bd. of

11 Prison Terms, 461 F.3d 1123, 1128-29 (9th Cir. 2006).  The California

12 Supreme Court, applying state law, also has required that there exist

13 "some evidence" to support a finding of parole unsuitability. See In

14 re Lawrence, 44 Cal. 4th 1181, 1204, 82 Cal. Rptr. 3d 169, 190 P.3d

15 535 (2008) ("Lawrence"); In re Shaputis, 44 Cal. 4th 1241, 1254, 82

16 Cal. Rptr. 3d 213, 190 P.3d 573 (2008) ("Shaputis"); In re

17 Rosenkrantz, 29 Cal. 4th 616, 658 & n.12, 128 Cal. Rptr. 2d 104, 59

18 P.3d 174 (2002), cert. denied, 538 U.S. 980 (2003) ("Rosenkrantz"); In

19 re Powell, 45 Cal. 3d at 904.

20

21     In Hayward, the Ninth Circuit held that, "in the absence of state

22 law establishing otherwise, there is no federal constitutional

23 requirement that parole be granted in the absence of 'some evidence'

24 of future dangerousness. . . ." Hayward, 2010 WL 1664977, at *10.

25 The Hayward Court suggested that a federal Due Process liberty

26 interest might arise when state law establishes such a requirement.

27 Id. at *10.  Ultimately, however, the Hayward Court declined to rule

28 on the issue of whether a federal Due Process liberty interest arises

13

1  because of California law's requirement that parole be granted in the

2  absence of "some evidence" of future dangerousness.  Id. at *10-11.

3  The Hayward Court deemed it unnecessary to rule on this issue because

4  California's "some evidence" requirement is "exactly the same" as the

5  requirement previously applied in pre-Hayward Ninth Circuit case law.

6  Hayward, 2010 WL 1664977, at *10-11 (citing Lawrence and Shaputis).

7  Therefore, in a habeas case challenging a finding of parole

8  unsuitability in California, the federal district court "need only

9  decide whether the California judicial decision [upholding the

10 finding] was an 'unreasonable application' of the California 'some

11 evidence' requirement, or was 'based on an unreasonable determination

12 of the facts in light of the evidence.'"  Hayward, 2010 WL 1664977, at

13 *11 (citing 28 U.S.C. §§ 2254(d)(1), (2)).

14

15      Under the California "some evidence" requirement, the issue is

16 not whether the evidence supported any particular factor regarding

17 parole unsuitability, but rather whether "some evidence" indicates

18 that the prisoner's release unreasonably would endanger public safety.

19 Lawrence, 44 Cal. 4th at 1212 ("the relevant inquiry is whether some

20 evidence supports the *decision* of the Board . . . that the inmate

21 constitutes a current threat to public safety, and not merely whether

22 some evidence confirms the existence of certain factual findings")

23 (citations omitted; original emphasis).  "Only a modicum of evidence

24 is required."  Rosenkrantz, 29 Cal. 4th at 677.  "Resolution of any

25 conflicts in the evidence and the weight to be given the evidence are

26 matters within the authority of the [Board]."  The Board's decision

27 "must reflect an individualized consideration of the specified

28 criteria and cannot be arbitrary or capricious."  Id.  "It is



14

1   irrelevant that a court might determine that evidence in the record

2   tending to establish suitability for parole far outweighs evidence

3   demonstrating unsuitability for parole."   Id.

4

5   II.   **"Some Evidence" Supports the Board's Decision.**

6

7       Here, the Board found Petitioner posed an unreasonable risk of

8   danger to society if released from prison, given: (1) the

9   circumstances of the commitment offense, demonstrating exceptionally

10  callous disregard for human suffering; (2) "particularly disturbing"

11  prior violent behavior, including serious crimes reflecting the

12  failure of society's prior efforts to deal with Petitioner's

13  criminality; (3) a psychological assessment indicating a significant

14  potential for future violence, even when compared with other life term

15  inmates; and (4) Petitioner's prison disciplinary history (Lodgment 7

16  at 62-66).  These findings, which the record supports, provide "some

17  evidence" that Petitioner's release unreasonably would endanger public

18  safety.  See Cal. Code Regs., tit. 15, § 2402(c); see also In re

19  Shaputis, 44 Cal. 4th 1241, 1260, 82 Cal. Rptr. 3d 213, 190 P.3d 573

20  (2008) (prior history of violence and recent psychological reports can

21  provide "some evidence" of future dangerousness); Fowler v. Attorney

22  General for California, 286 Fed. App'x 434, 435 (9th Cir. 2008)

23  (unfavorable psychological report and failure of subsequent reports

24  fully to evaluate unfavorable findings of the previous report

25  sufficient); Wauls v. Muntz, 256 Fed. App'x 106, 107 (9th Cir. 2007)

26  (nature of commitment offense, criminal history, and disciplinary

27  history sufficient to support Board's findings); Hernandez v. Perez,

28  256 Fed. App'x 108, 109 (9th Cir. 2007) (pre-incarceration factors,



15

1  including commitment offense, and prison disciplinary record were

2  sufficient); <u>Rosas v. Nielsen</u>, 428 F.3d 1229, 1232-33 (9th Cir. 2005)

3  (circumstances of commitment offense along with psychiatric reports

4  were sufficient); <u>Brazil v. Davison</u>, 639 F. Supp. 2d 1129, 1150 (C.D.

5  Cal. 2009) ("A determination in a psychologist's report that an inmate

6  may present a low to moderate risk of violence to the community if

7  released constitutes 'some evidence' supporting a denial of parole . .

8  ."); <u>Martin v. Ornoski</u>, 2008 WL 1808517, at *3-5 (N.D. Cal. Apr. 22,

9  2008) (commitment offense and prison disciplinary history were

10 sufficient); <u>Burnight v. Carey</u>, 2007 WL 3231583, at *3 & n.1 (E.D.

11 Cal. Oct. 30, 2007), <u>adopted</u>, 2008 WL 275694 (E.D. Cal. Jan. 31, 2008)

12 (nature of commitment offense and triviality of motive were

13 sufficient).

14

15 **III. <u>Petitioner's Various Arguments Lack Merit.</u>[2]**

16

17     To the extent Petitioner contends the Board violated state law or

18 regulations in some manner apart from the "some evidence" analysis,

19 Petitioner is not entitled to habeas relief.  A federal court may

20 grant habeas corpus relief "only on the ground that [the petitioner]

21 is in custody in violation of the Constitution or laws or treaties of

22 the United States."  28 U.S.C. § 2254(a).  Mere errors in the

23 application of state law are not cognizable on habeas corpus.  <u>Estelle</u>

24 <u>v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Moor v. Palmer</u>, ___ F.3d ___,

25

26 _____

27     [2]     The Court has read, considered and rejected on the
    merits all of Petitioner's arguments.  The Court discusses

28  Petitioner's principal arguments herein.

16



1   2010 WL 1712489, at *2 (9th Cir. Apr. 29, 2010) ("To the extent Moor

2   is requesting habeas relief on the basis of the [Parole] Board's

3   violation or misapplication of Nevada statutes in and of themselves,

4   he fails to state a basis for federal habeas relief . . ."); <u>Eccher v.</u>

5   <u>Mendoza-Powers</u>, 2007 WL 867985, at *12 n.3 (E.D. Cal. Mar. 20, 2007),

6   <u>adopted</u>, 2007 WL 1302490 (E.D. Cal. May 3, 2007) (claims that Board

7   failed to engage in comparative analysis and failed to set a parole

8   date within the sentencing matrix presented only claims of state law

9   error not cognizable on federal habeas).[3]

10

11      Petitioner appears to argue that the Board should have weighed

12   more heavily certain arguably positive factors.  However, this Court

13   cannot re-weigh the factors supporting parole suitability and the

14   factors supporting parole unsuitability.  <u>See</u> <u>Chichil v. Kane</u>, 255

15   Fed. App'x 194, 194 (9th Cir. 2007) ("the 'some evidence' standard

16   does not allow us to reweigh the evidence before the Board"); <u>Crawley</u>

17   <u>v. Knowles</u>, 235 Fed. App'x 563, 564 (9th Cir. 2007) ("The 'some

18   evidence' standard does not allow us to entertain Crawley's

19   contentions regarding how the Board evaluated the evidence it had

20   before it when it made its suitability determination. [citation].");

21   <u>Powell v. Gomez</u>, 33 F.3d 39, 42 (9th Cir. 1994); <u>Countryman v. Stokes</u>,

22   2008 WL 1335934, at *11 (C.D. Cal. Apr. 8, 2008); <u>Collier v. Dexter</u>,

23   2008 WL 816688, at *12 (C.D. Cal. Mar. 25, 2008); <u>see also</u> <u>In re</u>

24   <u>Shaputis</u>, 44 Cal. 4th 1241, 1260-61, 82 Cal. Rptr. 3d 213, 190 P.3d

25

26   _____

         [3]      The Court recognizes that <u>Hayward</u> requires the Court to
27   consider California's "some evidence" standard, given the
     congruity of this standard with the previously applied federal
28   "some evidence" standard.



1  573 (2008) (although it might be reasonable to conclude that

2  petitioner's many years of sobriety, advanced age and health problems

3  suggested he would never again consume alcohol and engage in criminal

4  conduct, court cannot reweigh the evidence as long as the record shows

5  "*due consideration of the specified factors* as applied to the

6  individual prisoner in accordance with applicable legal standards")

7  (original emphasis).  Moreover, even if the Board (or the state

8  courts) made some insupportable findings, the Court nevertheless must

9  deny habeas relief where, as here, there exists "some evidence"

10  supporting the Board's finding of unsuitability.  See Biggs, 334 F.3d

11  at 916.

12

13       Contrary to Petitioner's argument, the Board did not violate the

14  rule of Lawrence.  In Lawrence, the California Supreme Court concluded

15  that "the aggravated nature of the crime does not in and of itself

16  provide some evidence of current dangerousness to the public unless

17  the record also establishes that something in the prisoner's pre- or

18  post-incarceration history, or his or her current demeanor or mental

19  state, indicates that the implications regarding the prisoner's

20  dangerousness that derive from his or her commission of the commitment

21  offense remain probative to the statutory determination of a

22  continuing threat to public safety."  Lawrence, 44 Cal. 4th at 1214.

23  The Lawrence Court's conclusion has no impact on the present case.

24  Here, evidence of Petitioner's continuing dangerousness derived not

25  only from the commitment offense, but also from a prior history of

26  violence, a prison disciplinary history, and a recent psychological

27  report that the Board reasonably interpreted as a "red flag"

28  (Lodgment 7 at 65).

18



1   Petitioner argues that the California parole regulatory standard

2   is unconstitutionally vague, citing <u>Maynard v. Cartwright</u>, 486 U.S.

3   356 (1988).  This argument must be rejected.

4

5   Unconstitutional vagueness may exist where the wording "fails to

6   give a person of ordinary intelligence fair notice that his conduct is

7   forbidden."  <u>United States v. Batchelder</u>, 442 U.S. 114, 123 (1979)

8   (citations and quotations omitted); <u>see also</u> <u>United States v. Johnson</u>,

9   130 F.3d 1352, 1354 (9th Cir. 1997); <u>United States v. Gallagher</u>, 99

10  F.3d 329, 334 (9th Cir. 1996), <u>cert. denied</u>, 520 U.S. 1129 (1997).

11  Alleged vagueness should be judged in light of the conduct involved.

12  <u>See, e.g.</u>, <u>United States v. Powell</u>, 423 U.S. 87, 92-93 (1975).

13  Petitioner must show that the standards are vague as applied to him,

14  for "[u]nless First Amendment freedoms are implicated, a vagueness

15  challenge may not rest on arguments that the law is vague in its

16  hypothetical applications, but must show that the law is vague as

17  applied to the facts of the case at hand."  <u>United States v. Johnson</u>,

18  130 F.3d at 1354 (<u>citing</u> <u>Chapman v. United States</u>, 500 U.S. 453, 467

19  (1991)); <u>see also</u> <u>United States v. Gallagher</u>, 99 F.3d at 334.  "The

20  Due Process Clause does not require the same precision in the drafting

21  of parole release statutes as is required in the drafting of penal

22  laws."  <u>Hess v. Board of Parole and Post-Prison Supervision</u>, 514 F.3d

23  909, 914 (9th Cir.), <u>cert. denied</u>, 128 S. Ct. 2972 (2008).

24

25  Contrary to Petitioner's suggestion, the applicable standards

26  give a person of ordinary intelligence fair notice.  <u>See</u> <u>Arave v.</u>

27  <u>Creech</u>, 507 U.S. 463, 471-73 (1993) (upholding against vagueness

28  challenge the phrase "cold-blooded, pitiless"); <u>Greenholtz v. Inmates</u>



19

1 of the Nebraska Penal and Correctional Complex, 442 U.S. 1 (1979)

2 (employing the term "gravity" of the offense); Ortiz v. Ayers, 2008 WL

3 2051051, at *5 (N.D. Cal. May 13, 2008) (rejecting vagueness challenge

4 to California parole standards); Grewal v. Mendoza-Powers, 2008 WL

5 1734700, at *7-8 (E.D. Cal. Apr. 11, 2008), adopted, 2008 WL 3470234

6 (E.D. Cal. Aug. 12, 2008) (same); McCottrell v. Ayers, 2007 WL

7 4557786, at *9-11 (N.D. Cal. Dec. 21, 2007) (same, and specifically

8 noting subfactors including whether there were multiple victims,

9 whether the victims were abused and whether the offense was carried

10 out in a manner demonstrating an exceptionally callous disregard for

11 human life).

12

13     Petitioner's reliance on Maynard ignores the principle that

14 "[t]he Due Process Clause does not require the same precision in the

15 drafting of parole release statutes as is required in the drafting of

16 penal laws." Hess v. Board of Parole and Post-Prison Supervision, 514

17 F.3d 909, 914 (9th Cir.), cert. denied, 128 S. Ct. 2972 (2008)

18 (citations omitted). The statute need only make a "principled

19 distinction" between those who are suitable for parole and those who

20 are not. See id. Here, the challenged laws provide numerous and

21 specific criteria for determining suitability, and are not

22 unconstitutionally vague. See, e.g., Clark v. Kane, 2010 WL 668029,

23 at *6 (N.D. Cal. Feb. 19, 2010); Wagoner v. Sisto, 2009 WL 2712051, at

24 *6 (C.D. Cal. Aug. 26, 2009).

25

26     Petitioner also appears to argue that the Board failed to give

27 him sufficiently individualized consideration. This argument lacks

28 merit.

1   Due Process requires that the state provide a prisoner with an
2   opportunity to be heard and, if parole is denied, a statement of
3   reasons for the denial. Greenholtz, 442 U.S. at 16; Bermudez v.
4   Duenas, 936 F.2d 1064, 1066 (9th Cir. 1991). Petitioner received
5   these procedural safeguards. See Rose v. Kane, 2006 WL 3251735, at
6   *11 (N.D. Cal. Nov. 2, 2006), aff'd, Rose v. Kane, 270 Fed. App'x 610
7   (9th Cir. 2008) (petitioner did not receive a "pro forma" adjudication
8   from the Board "because he had an opportunity to be heard and the
9   Board informed him as to how he fell short of qualifying for parole").
10  The record belies any assertion that the Board failed to afford
11  Petitioner individualized consideration. The Board considered many
12  factors, as discussed above, and allowed Petitioner and his counsel to
13  address the issue of parole suitability. The Board's decision shows
14  it denied parole based on Petitioner's particular circumstances. Both
15  the hearing and the decision reflect sufficiently individualized
16  consideration of Petitioner's suitability or unsuitability for parole.
17
18      In sum, the state courts' rejection of Petitioner's claims was
19  not contrary to, or an objectively unreasonable application of, any
20  clearly established Federal law as determined by the United States
21  Supreme Court. See 28 U.S.C. § 2254(d).
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

21

**RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Revised Report and Recommendation; and (2) denying and dismissing the Petition with prejudice.


DATED:   May 3, 2010.


_____/s/_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

22

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.

If the District Judge enters judgment adverse to Petitioner, the District Judge will, at the same time, issue or deny a certificate of appealability. Within twenty (20) days of the filing of this Report and Recommendation, the parties may file written arguments regarding whether a certificate of appealability should issue.